IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LAQUISHA KIRK, §
§
    Plaintiff, §
§
v. § Civil Action No. 3:25-CV-0515-N
§
CITY OF GARLAND, *et al.,* §
§
    Defendants. §

## <u>MEMORANDUM OPINION AND ORDER</u>

This Order addresses motions to dismiss filed by Garland Police Officer Christopher Mittendorf [18], the City of Garland ("the City") [20], and Garland Independent School District ("GISD") [21]. For the reasons set forth below, the Court grants the motions and gives Plaintiff Laquisha Kirk leave to amend in response to the Court's Order.

## I. ORIGINS OF THE MOTIONS

This is an excessive force case. On or about May 23, 2023, Plaintiff H. K., a minor, stood near a fight involving other students in the hallway of North Garland High School.[1] Pl.'s Am. Compl. ¶ 15. Officer Mittendorf, a Garland police officer assigned to the school as a school resource officer, attempted to break up the fight. *Id.*; *see also* Def.'s Mot. Br. 4–5 [21]. After observing Mittendorf "restraining her friend in an aggressive manner," H.K. alleges that she backed away from the fight and asked Mittendorf get off her friend. Pl.'s Am. Compl. ¶ 15–16. Mittendorf then "grabbed H.K. by her hair on both sides of her

---

[1] For purposes of these motions, the Court assumes the truth of all well-pleaded facts in the complaint.

MEMORANDUM OPINION AND ORDER – PAGE 1

head and forced her to the ground" and, after putting his leg out to trip her down, "he then put his arm and his knee in H.K.'s back." *Id*. ¶ 16. H.K. reported that Mittendorf's actions impaired her ability to breathe. *Id*. H.K. asserts that the incident "was depicted in a video circulated to news media."[2] *Id*. Mittendorf then placed H.K. in tight handcuffs and placed her in the back seat of a police car for thirty minutes. *Id*. ¶ 18. H.K. later visited a medical facility where she learned that she had a neck sprain caused by Mittendorf. *Id*. ¶ 20. She suffered emotional and psychological trauma and did not return to North Garland High School to finish her education out of fear of Mittendorf. *Id*. ¶ 20.

After H.K.'s detainment, she called her mother, Laquisha Kirk, who went to the campus and questioned the school principal about what happened to her daughter. *Id*. ¶ 21. The principal directed Kirk to speak with Mittendorf. *Id*. Mittendorf walked away from Kirk and ignored her questions. *Id*. Kirk attempted to follow Mittendorf into the gymnasium as the door closed quickly behind him. *Id*. When Mittendorf "noticed that Kirk caught the door, he . . . grabbed her arm and forcefully pushed her out of the door." *Id*. Mittendorf "grabbed her so violently that he caused bruising on her arm." *Id*. ¶ 21.

Kirk brings this suit individually and on behalf of H.K., her daughter. Kirk alleges several causes of action against each defendant. She asserts section 1983 claims against

---

[2] Defendant Mittendorf submitted a video of the incident in support of his motion to dismiss. Def.'s App. 1 [7]. However, the Court can properly consider a defendant's attachments to its motion only when the attachment is referenced in the complaint and central to the plaintiff's complaint. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *see also Salinas v. Loud*, 2022 WL 17669724 at *2 (N.D. Tex. 2022). Mittendorf's video is not the video referenced in the complaint. Pl.'s Resp. Br. 2 [24]. Accordingly, the Court does not consider the video in its analysis.

MEMORANDUM OPINION AND ORDER – PAGE 2

Officer Mittendorf for excessive force against H.K. and Kirk, and one section 1983 claim against Mittendorf and two unidentified officers for H.K.'s seizure and arrest.  Pl.'s Am. Compl. ¶¶ 29, 34, 39.  Separately, she asserts section 1983 claims against Mittendorf, the City, and GISD, for violating H.K.'s Fourteenth Amendment right to due process.  *Id*. ¶ 32.  She then brings a series of tort claims against the City, the Garland Police Department, GISD, Mittendorf, and the two unidentified officers.  *Id*. ¶¶ 41, 52–53, 60, 65–66, 69.  Mittendorf, the City, and GISD now move to dismiss for failure to state a claim.

## II.  RULE 12(B)(6) LEGAL STANDARD

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted).  Thus, a district court may properly consider contracts or other documents that are not attached to the complaint, but are referenced in and central to it, and attached to a defendant's Rule 12(b)(6) motion.  *See Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

A viable complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  *Id*. (internal citations omitted).

### III.  LEGAL STANDARD FOR A SECTION 1983 CLAIM

To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal citations omitted).

To establish that Mittendorf violated the Fourth Amendment, Kirk must allege that H.K. and Kirk "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force."  *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).  "Crucially, this analysis must be objective: To make out a Fourth Amendment violation . . . 'the question is whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'"  *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 397).  "The 'reasonableness' of a particular use of force must

MEMORANDUM OPINION AND ORDER – PAGE 4

be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. With "careful attention to the facts and circumstances of each particular case," the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "But even an officer who may lawfully use or threaten force must appropriately calibrate the amount of force he employs to the need for force he confronts." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). When detaining an uncooperative arrestee, officers must properly use "measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance." *Joseph*, 981 F.3d at 332–33 (quoting *Poole*, 691 F.3d at 629) (collecting cases).

### IV. LEGAL STANDARD FOR QUALIFIED IMMUNITY

"Qualified immunity is a defense available to public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once a defendant asserts the qualified immunity defense, "[t]he plaintiff bears the burden of negating qualified immunity." *Hyatt v. Thomas*, 843 F.3d 172 (5th Cir. 2016) (quoting *Brown v. Callahan*, 623 F.3d 249, 253).

Because Mittendorf has properly asserted qualified immunity, the Court must assess Kirk' claims to determine (1) whether either plaintiff has alleged a violation of a constitutional right, and if so, (2) whether that right was "clearly established" at the time of the public official's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the motion to dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

### V. THE COURT GRANTS THE MOTIONS TO DISMISS THE SECTION 1983 CLAIMS

The Court grants each motion to dismiss for failure to state a claim under section 1983. First, the Court finds that H.K. has not adequately alleged that Officer Mittendorf's actions were unreasonable under the circumstances. Second, the Court concludes that Kirk

MEMORANDUM OPINION AND ORDER – PAGE 6

failed to allege that Mittendorf violated her constitutional rights.  Next, the Court concludes that Kirk fails to state claims for relief against the City or GISD.

### A.  Kirk Do Not State a Plausible Section 1983 Claim Against the Officers

Here, Kirk, on behalf of H.K., alleged that Officer Mittendorf used excessive force and that Mittendorf and two unidentified officers unlawfully detained her.  Pl.'s Am. Compl. ¶ 27, 34.   However, the complaint lacks sufficient information for the Court to analyze the *Graham* factors and determine whether Kirk plausibly alleged that Mittendorf used excessive force or unlawfully arrested H.K.  For example, the amended complaint does not allow the Court to assess whether H.K. clearly posed an immediate threat to the safety of others or whether she actively resisted arrest.  *See Joseph*, 981 F.3d at 332.

The amended complaint also lacks sufficient detail for the Court to consider whether H.K.'s detainment was unlawful under the circumstances.[3]  In supporting Kirk's argument that H.K. was unlawfully detained, Kirk asserts that H.K. was never charged with a crime.  Pl.'s Am. Compl. ¶ 19.  The assertion, even if taken as true, is not evidence to suggest that any of the officers lacked probable cause to arrest H.K., and thus wrongfully detained her.  *See Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had

---

[3] Mittendorf argues that the officers had probable cause to arrest H.K. and cites specific statutory violations.  Def.'s Mot. Br. 9.  However, this argument relies on video evidence the Court does not consider.  *See supra*, fn. 2.

MEMORANDUM OPINION AND ORDER – PAGE 7

committed or was committing an offense.")).  Thus, the Court grants Mittendorf's motion to dismiss H.K.'s section 1983 claim.

The Court also grants the motion to dismiss Kirk's excessive force claim against Mittendorf.  Kirk alleged that Mittendorf violated her Fourth Amendment right to be free from excessive force by forcing a door closed and injuring her arm.  Pl.'s Am. Compl. ¶ 21–22.  However, Kirk did not properly allege that Mittendorf's conduct constituted a seizure within the meaning of the Fourth Amendment.  *See e.g., Brower v. Cnty. of Inyo*, 489 U.S. 593, 595 (1989); *see also Perkins v. Hart*, 2023 WL 8274477 at *6 (5th Cir. 2023) (unpub.) (holding that "there was simply no seizure from which an excessive force claim can stem" because Plaintiff did not allege that he was prevented from leaving the scene of an incident).  Thus, even accepting Kirk's version of facts as true, she does not state a claim of excessive force because there was no underlying violation of her Fourth Amendment rights.  The Court dismisses Kirk's section 1983 claims against Officer Mittendorf and the two unidentified officers.

### B.  *Kirk Does Not State a Plausible Section 1983 Claim Against the City*

Kirk brings a section 1983 claim against the City and the Garland Police Department for violating H.K.'s Fourteenth Amendment right to due process and failure to train the officers involved in the incident.  Pl.'s Am. Compl. ¶ 32, 41.  First, the Court agrees with the City that the Garland Police Department is not a proper defendant in this case because it is a non-jural entity lacking a distinct legal identity from the City.  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991) (holding that, "for a plaintiff to sue a city department, it must 'enjoy a separate legal existence'"); *see also Merchant v. Garland*

MEMORANDUM OPINION AND ORDER – PAGE 8

*Police Dep't*, 2022 WL 1158262 at \*3 (N.D. Tex. 2022), *R. & R. adopted*, 2022 WL 1158005 (N.D. Tex. 2022).

Next the Court concludes that no facts in the complaint support a claim for section 1983 municipal liability. To establish municipal liability under section 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017). For example, Kirk wholly fails to allege that the City deprived Kirk or H.K. of a constitutionally protected right or that the City provided the moving force, such as a policy, practice, or custom, behind any alleged constitutional violation. Accordingly, the Court grants the City's motion to dismiss Kirk's section 1983 claims against the City and the Garland Police Department.

### C. *Kirk Does Not State a Plausible Section 1983 Claim Against GISD*

Next, Kirk brings a section 1983 claim against GISD for violating H.K.'s Fourteenth Amendment due process right. Pl.'s Am. Compl. ¶ 32. The Court holds that Kirk fails to state a claim against GISD because she fails to allege that any GISD employee violated Kirk or H.K.'s constitutional rights.

Kirk's allegations against GISD stem from the police officers' conduct at North Garland High School. Pl.'s Am. Compl. ¶ 1. However, Kirk does not sufficiently allege that the officers were GISD employees or assert any facts that would make this allegation plausible. Kirk makes one conclusory allegation that Mittendorf was employed by the Garland Police Department and GISD. Pl.'s Am. Compl. ¶ 1. Yet, later in her complaint,

MEMORANDUM OPINION AND ORDER – PAGE 9

she asserts that Mittendorf and the unidentified officers were only employees of the Garland Police Department. *Id.* ¶ 6, 45. Moreover, even if the Court accepts the assertion that the officers were GISD employees as true, the Court has already concluded that Kirk failed to sufficiently plead section 1983 claims against the officers. Therefore, Kirk fails to adequately assert that a GISD employee violated H.K.'s constitutional rights. Accordingly, the Court grants the motion to dismiss this claim.

### D. *The Court Dismisses Kirk' State Law Claims*

Kirk bring the following five state law claims: (1) negligent failure to intervene against GISD, (2) assault and battery against Mittendorf and the unidentified officers, (3) false imprisonment against Mittendorf and the unidentified officers, and (4) negligence against Mittendorf. [4] *See generally*, Pl.'s Am. Compl. ¶¶ 40–69. As previously discussed, the Court holds that the claims against Garland Police Department must be dismissed because it is a non-jural entity and does not have a distinct legal existence from the City. *Darby*, 939 F.2d at 313–14. The Court dismisses the state law claims for the following reasons. First, the Court dismisses the intentional tort claims against the City and the individual officers in accordance with the Texas Tort Claims Act ("TTCA"). Then, the

---

[4] Kirk' negligence claim against Officer Mittendorf relies on the same factual allegations as their section 1983 excessive force claim. However, the Texas Supreme Court has determined that a plaintiff may not maintain a claim of negligence regarding an officer's use of force during an arrest because, while an officer may misjudge the amount of force needed to conduct an arrest, the use of force was necessarily intentional. *City of Watauga v. Gordon*, 434 S.W.3d 586 (Tex. 2014). Thus, Kirk' negligence claim fails as a matter of law.

MEMORANDUM OPINION AND ORDER – PAGE 10

Court dismisses the claims against GISD because the school district is immune from suit on the negligence claim.

First, Kirk' claims against the City for the intentional torts of assault and battery, false imprisonment, and negligence are prohibited under the elections of remedies clause of the TTCA. Def.'s Mot. Br. 15 [20]; *see also* TEX. CIV. PRAC. & REM. CODE §101.106(b). The election of remedies clause provides:

> The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

*Id*. §101.106(f).

Here, Kirk asserts state law claims against the City and individual officers, including Officer Mittendorf. Pl.'s Am. Compl. ¶¶ 54–69. Thus, Kirk made an irrevocable election to proceed against the individual officers only. Accordingly, the Court grants the motion to dismiss the intentional tort claims against the City.

The Court also dismisses Kirk's intentional tort claims against the individual officers. The TTCA allows suits against government employees only in instances where the employee acted in his or her official capacity:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).

MEMORANDUM OPINION AND ORDER – PAGE 11

Kirk does not dispute that the officers were acting in their official capacities as SROs at North Garland High School.  Thus, the officers are entitled to the same sovereign immunity protections available to the City.  Therefore, the Court grants the motion to dismiss these claims.

Lastly, the Court concludes that GISD is immune from suit on Kirk's claims.  In addition to alleging that Officer Mittendorf was an employee of GISD, Kirk alleges that two unidentified North Garland High School employees failed to intervene to stop Mittendorf's use of force against H.K.  Pl.'s Am. Compl. ¶¶ 51–53.  Under Texas law, GISD is entitled to governmental immunity from liability unless it waived the privilege.  *See Carn v. Mesquite Indep. Sch. Dist.*, WL 111348730 at *2 (N.D. Tex. 2020).  Furthermore, the TTCA provides a limited waiver of this immunity for tort claims against school districts when the alleged injury "arises from the operation or use of a motor[] vehicle."  TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.051.  Here, GISD did not waive its immunity and Kirk does not make any factual allegations relating to the operation or use of a motor vehicle.  *See e.g.*, *George v. Abbott*, 2024 WL 3687103, at *10 (S.D. Tex. 2024).  Accordingly, the Court grants the motion to dismiss the tort claims against GISD.

### CONCLUSION

Because Kirk did not sufficiently allege section 1983 claims against Officer Mittendorf and the two unidentified Garland police officers, the Court grants the motion to dismiss her claims for excessive force and unlawful arrest.  Next, the Court concludes that GISD is entitled to statutory immunity and grants its motion to dismiss Kirk's claims.  The

MEMORANDUM OPINION AND ORDER – PAGE 12

Court also dismisses the claims against the City for failure to state a claim. Lastly, the Court grants Kirk leave to amend her section 1983 claims against the Garland police officers. She has thirty (30) days to file a second amended complaint. If Kirk does not amend her complaint, the Court will dismiss all claims with prejudice without further notice.

Signed March 25, 2026.

David C. Godbey
Senior United States District Judge